PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v*. FÉLIX
GONZÁLEZ ZAMOT, Defendant and Appellant.

No. 4324.   Argued March 18, 1931.—Decided May 18, 1931.

*F. M. Susoni* and *F. B. Fornaris* for appellant.   *R. A. Gómez* for
appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

The appellant in this case was tried before a jury in the
District Court of Arecibo upon an information which reads
as follows:

"The prosecuting attorney files this information against Félix
González Zamot charging him with the crime of involuntary man-
slaughter, a felony, committed in the following manner:

"The said defendant, Félix González Zamot, on March 19, 1930,
at Kil. 58 of Road No. 2 leading from San Juan to Arecibo, and in
Manatí, P. R., which forms a part of the Judicial District of Arecibo,
P. R., and while driving as chauffeur a motor vehicle, to wit, an
automobile, unlawfully, wilfully, and maliciously, in going at an
excessive speed, without sounding any warning and without exercising
due care or taking all reasonable precautions to avoid frightening a
horse that was being ridden along that same road, and without
slowing down his automobile when the horse became frightened,
caused his vehicle to strike Demetrio Rodríguez (a human being),
who was riding the horse, thereby inflicting upon him several bodily
injuries resulting in his unlawful death, which occurred then and
there shortly thereafter.

"This is contrary to the law for such case made and provided and against the peace and dignity of the People of Puerto Rico.

"(Sgd.) E. Pérez Casalduc, District Attorney."

The defendant requested the trial judge to give certain special instructions which must unavoidably be transcribed here. They read as follows:

"The accused respectfully requests this Honorable Court to transmit to the jury the following additional instructions:

"1.—The Court instructs the jury as a matter of law that there is nothing in the highway laws or in the Motor Vehicles Act requiring an automobile to keep sufficiently to the left when passing close to another car or object; on the contrary, automobiles are required to keep as much as possible to the right without causing collisions.

"2.—The Court also instructs the jury as a matter of law that if it were shown that the accused was lawfully driving his car along the road already mentioned, and owing to some unforeseen circumstance the horse which the deceased was riding became frightened in an unexpected manner when the defendant chauffeur was so near that not even by applying the emergency brakes could he possibly have stopped his car to avoid the accident, and if under such circumstances the car strikes the animal and kills the rider, his death should be attributed solely to the deceased, and the chauffeur should be exempted from liability.

"3.—If the jury believe that the defendant gave warning of his approach from a reasonable distance, then as regards this point he should not be considered to have been negligent, since such warning must be given precisely from a reasonable distance and never at the moment of passing close to the horse and its rider, as the warning in the latter case would be too late and would rather tend to produce excitement, fright, or panic in the mind of the rider and in the actions of the animal.

"4.—As a matter of law, the rule imposing on every operator or chauffeur the duty to maintain a rate of speed sufficiently low so as to be able to control and stop his car has no application in cases of real emergency, where there is no reason for anticipating that one will be suddenly confronted by such emergency.

"A person who is confronted by a situation of imminent peril, when immediate action is necessary to avoid it, is not required to exercise all that presence of mind and diligence which are justly

required of a careful and prudent man under ordinary circumstances.

"5.—The degree of negligence required to be proved in a prosecution for homicide, based on an unintentional killing through the agency of a motor vehicle, is greater than is required in a civil case, and before a defendant can be convicted there should be proof of such want of care or of carelessness to such an extent as to be incompatible with a proper regard for human life.

"6.—The general rule is that for the negligence on the part of a person resulting in damage to another to be criminal, it must necessarily have been so wanton or reckless or of such a nature as to show an utter disregard for the safety of others and under such circumstances as necessarily to cause injury.

"7.—The fact that an automobile is driven at a greater rate of speed than that established by law is not conclusive proof of guilt in a case of manslaughter for want of care and circumspection.

"8.—For an operator of an automobile to be criminally liable for a killing caused by his negligence, the want of care must be great, implying complete indifference to its consequences.

"9.—If driving in excess of the legal speed limit is not the proximate cause of a collision resulting in the death of a person, a violation of the law because of speeding does not render the defendant liable.

"10.—The death must be due to the unlawful act of the defendant and not to the intervention of a third person or the intervention of a cause in which the defendant took no part or which he could not foresee.

"11.—Where a person meets a situation of danger he is not required to exercise the same degree of care as, when he has time for deliberation and for the full exercise of his reasoning faculties.

"12.—Failure to exercise the best judgment in an emergency is not proof of negligence, even though the mistake might have regrettable consequences.

"The law does not impose rules of conduct on a person who is suddenly confronted with a critical situation nor demands that he act in accordance with the dictates of caution and reason, but to be guided by the instinct of self-preservation.

"13.—If the jury believe that the accident was not due to the negligence and carelessness of the chauffeur, the defendant herein, but was due to the motions of the horse ridden by the decedent which placed him in a fatal situation and in such circumstances that

rendered the accident unavoidable, then it is your duty to acquit the defendant.

"The accused is also entitled to the benefit of a reasonable doubt. Even if you believe the testimony of the government witnesses, if there is any circumstance which makes your conscience hesitate in considering the facts, it is also your duty to give the accused the benefit of such reasonable doubt and acquit him.''

The judge transmitted to the jury instructions numbered 4 and 10 and refused the others because they were covered by his own instructions.

We have read the instructions given by the judge to the jury. They may be said to be complete and in accordance with the law and with the construction thereof sanctioned by our decisions.

Where special instructions are requested to be given, the judge is not required to transmit them to the jury in the same words used by the party making the request. It is sufficient if the judge sets forth, in such form as he deems best, the legal doctrine invoked and which the jury should know.

In the instant case the judge instructed the jury on the points of law which the defense desired the jury to be informed.

Our only doubt is in regard to the first instruction. However, the instruction as drafted by the defense was not really the proper one to give in this case. In *Rivera* v. *Graham*, 34 P.R.R. 1, cited to us by the *Fiscal* of this Court in his brief, the situation was different. The complainant was traveling on a truck so that his legs hung over one side of the vehicle; the automobile that caused the injury was going in the same direction and, according to the plaintiff, with the right rear mudguard struck the plaintiff's legs, which were driven back and as a consequence the chain that moved the rear wheels caught his right foot. This is what the plaintiff alleged. What was said in the cited case can have no application to another where the facts are different. In the present case the accident was due to various causes, as excessive

speed, absence of warning, lack of care, and even failure to stop the automobile in time notwithstanding the ability to do so. The instruction was not proper and a refusal on this ground would have been sustained.

The error assigned by the appellant as regards the instructions to the jury is nonexistent.

It is urged by the defendant and appellant that the verdict was against the evidence and contrary to law.

The evidence was somewhat conflicting. To any unprejudiced mind the evidence for the government was the stronger. It justifies the belief that the tragic death of Demetrio Rodríguez was solely due to the gross carelessness of the accused, to his indifference to avoid something so important as the death of a human being, and to the excessive speed at which he was driving his car. The jury adjusted the conflict in favor of the prosecution. And where a jury thus weighs the evidence, a very strong case must be presented before we will disturb the verdict and reverse the judgment complained of. This is not such a case.

The judgment appealed from must be affirmed.